# City Council of Montgomery v. National Building and Loan Association.

*Action for doing Business without City License.*

1. *Constitutional law prescribing that a bill shall contain but one subject which shall be clearly expressed in its title.*—The title of a bill may be very general, and need not specify every clause in the statute. Sufficient if they are referable and cognate to the subject expressed, and when the subject is expressed in general terms, everything which is necessary to make a complete enactment in regard to it, or which results as a complement of thought contained in the general expression is included in and authorized by it. The subject may include minor subjects, provided all these minor subjects can be combined so as to form one grand and comprehensive subject; and if the title of the bill containing this grand and comprehensive subject is comprehensive enough to contain the minor subjects as one subject, the bill and all parts thereof will be valid.

[City Council of Montgomery v. National Building and Loan Association.]

2. *Repeal of law by implication.*—Repeal of former laws by implication will not be decreed unless it is manifest that the legislature so intended, unless the repugnancy between the two is not only irreconsilable, but also clear and convincing, and following necessarily from the language used, or unless the latter act fully embraces the subject matter of the first, or the reason for the former act is, beyond peradventure, removed.

3. *Same.*—Where the intention of the legislature is not apparent to that purpose, the general words of a later statute will not repeal the particular provisions of a former one; the maxim of the law being *generalia specialibus non derogant.*

4. *Same*—The question of implied repeal, is one of intention, and where two acts are passed at the same session of the legislature on the same subject, it shows an intention that one is not repealed by the other, but that they are to be construed together.

APPEAL from Montgomery Circuit Court.

Tried before Hon. J. R. TYSON.

This suit was brought by the appellant against the appellee, and sought to recover a penalty for the carrying on by the defendant in the city of Montgomery of a building and loan business. The defendant in its plea, set up an act of the legislature, regulating building and loan associations, (Acts § 1892-93 p. 665) alleging that it did business throughout the state, and had paid the license therein required.

By demurrer, the plaintiff attacked the constitutionality of that act, on the grounds noted in the opinion, and also raised the point that so far as the city of Montgomery was concerned, said act was repealed by an amendment to its charter passed by the legislature and approved February 21st 1893.

These demurrers were overruled, and judgment rendered for the defendant, from which plaintiff appealed.

GRAHAM & STEINER, for appellant.—The caption of the act relied upon by the appellee, does not show that by paying a license to the State, such associations shall be exempt from all other license tax, and hence is void. *Moses v. Mayor,* 52 Ala. 198; Cooley Con. Lim. 143-146; *Woolf v. Taylor,* 98 Ala. 254; *State v. Hartford F. I. Co.* 99 Ala. 221; *Ballentyne v. Wickersham,* 75 Ala. 533.

The latter act, authorizing the city of Montgomery to license all business, was a repeal of the exemption in the act regulating building and loan associations, so far

22

[City Council of Montgomery v. National Building and Loan Association.]

as said city was concerned.—Sutherland Stat. Con. par. 137-8 ; Cooley Con. Lim. §§ 143-146 ; *Moses v. Mayor*, 52 Ala. 198 ; *Kinney v. Mallory*, 3 Ala. 626 ; *Jackson v. State*, 76 Ala. ; 26 ; I. B. 270 ; *Pearce v. Bank*, 33 Ala. 693 ; *Douglas v. Mayor*, 16 So. Rep., 130.

TOMPKINS & TROY, *contra.*—On the constitutionality of the act regulating Building & Loan associations, cited. *Montgomery v. Robinson*, 69 Ala. 413 ; Sutherland Stat. Con. 86 ; *Ex parte Pollard*, 40 Ala. 77 ; *Stein v. Leeper*, 78 Ala. 517 ; *Ballentyne v. Wickersham*, 75 Ala. 533 ; *Ramagnano v. Crook*, 85 Ala. 226.

McCLELLAN, J.—The General Assembly at its session of 1892-3 passed an act having the following title : "An act, to regulate the business of building and loan associations in this State ; to prohibit such associations from hypothecating and transferring their securities, unless such privilege be granted by the General Assembly ; to require associations organized in other States and Territories to deposit securities with the State treasurer in trust for their members and creditors, and prescribing how such securities shall be withdrawn, and requiring such association to pay a license of two hundred dollars per annum to the State Auditor for the use of the State ; defining premiums, fines and stock taken to represent premiums ; requiring associations to pay taxes ; to require from associations of other States and Territories the same obligations, requirements and prohibitions that such other States and Territories require of associations organized in this State and doing business in such other States and Territories; defining 'building and loan associations'; to require officers handling money to execute bond ; not to apply to associations confining their business to one county ; to prescribe a penalty for doing business before complying with this act; and providing for associations already doing business which do not desire to comply with this act : foreign associations have until 1st day of June, 1893, to comply with this act; when to go into effect." Acts 1892-93, p. 665. Section 2 of this act, among other things, provides : "Every building and loan association organized in this State or in any other State, Territory or foreign government, shall pay as a

license for doing business in this State the sum of two hundred dollars ($200) dollars per annum in lieu of all other licenses and taxation, except as hereinafter provided, into the office of the State Auditor, who shall deposit the same in the State treasury, for the use of the State." Section 8 of this act provides that it shall not apply "to any building and loan association organized under the laws of this State, which confines its loaning and business operations wholly to its county." It is contended for appellant that the provision in the clause just quoted for the exemption of such associations from all other licenses and taxation is violative of the constitutional requirement, that "Each law shall contain but one subject, which shall be clearly expressed in its title," (Const. Art. 4, § 2); the insistence being that the subject and matter of this provision is not expressed in the title of this act which is set out above. We do not think that this position is supported by any adjudication of this court now regarded as authority. We need not review our numerous decisions on this subject, nor even re-state the doctrine which they have established further than as it is embodied in the following expressions taken from the leading case in Alabama on the question: "The title of a bill may be very general, and need not specify every clause in the statute. Sufficient if they are all referable and cognate to the subject expressed. And when the subject is expressed in general terms, everything which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is included in and authorized by it. The 'subject' * * * may be as broad and comprehensive as the legislature may choose to make it. It may include innumerable minor subjects, provided all these minor subjects are capable of being so combined as to form only one grand and comprehensive subject; and if the title of the bill, containing this grand and comprehensive subject, is also comprehensive enough to include all these minor subjects, as one subject, the bill and all parts thereof will be valid. * * * * * The exigencies of legislation require that this provision should not be so literally construed as to cripple the legislature, by prohibiting the insertion into laws of those matters which, though they

may not be specifically expressed in the title, are proper to the full accomplishment of the object so expressed. Such is presumed to have been the intention of the authors. Courts, therefore, give it a liberal construction. The insertion in a law of matters which may not be verbally indicated by the title, if suggested by it, or connected with, or proper to the more full accomplishment of the object so indicated, is held to be in accordance with its spirit."—*Ballentyne v. Wickersham*, 75 Ala. 533.

The caption of this act in its opening clause expresses "the grand and comprehensive subject," spoken of in the books, with which the legislature proposed to deal. In that clause they set forth the purpose that actuated them and the general scope of the enactment to follow. They proposed, and it was there stated that the scope and purpose of the act was, "to regulate the business of building and loan associations in this State." Now the imposition of a license tax upon any business, and the requirement that such tax shall be paid, and a license to engage in a given business shall be taken out before such business shall be carried on, is a recognized mode, frequently resorted to in the legislation of this State, of regulating that business; and while it may partake more of the nature of taxation in many instances than of purely police surveilance, it is nevertheless in common parlance, and aptly referred to as, a regulation of business. Licensing and license taxation being thus in common acceptance a means and character of business regulation, the incorporation of a provision therefor in an act to regulate a business is clearly, we think, referable and cognate to that comprehensive subject, and is but one of the minor subjects covered thereby. And such licensing and imposition of such license tax being thus embraced in the broad subject expressed, the amount of such tax, the privileges and exemptions to be secured by its payment, whether one license and one such payment shall entitle the party taking the license and paying the tax to do business throughout the State, or whether he shall be required to pay or be exempted from the payment of other and additional license taxes, State, county or municipal, are minor subjects, or rather integral parts of this minor subject which along with

[City Council of Montgomery v. National Building and Loan Association.]

it are embraced in the general and fully expressed purpose to regulate the doing of the business in this State. So that a member of the legislature, hearing the bill read only by its title, would be put upon notice that license taxation, and, of course, the amount and extent thereof, was within the scope of the proposed act; and thus the purpose of the constitutional provision would be fully accomplished.—*Ex parte, Cowert,* 92 Ala. 94.

But this caption has another clause, a sort of sub-title, which refers expressly to the purpose intended to be effectuated by the act of licensing and imposing a license tax on the business of building and loan associations. Out of superabundant caution the writer of this caption and bill set forth in the caption a purpose to require in the body thereof that these associations should pay to the State Auditor two hundred dollars per annum for the use of the State. This was but the expressed specification of one of the regulations which was already covered by the general title of the act as comprehensively expressed in the first clause. The purpose for which this two hundred dollars was to be imposed, the effect which should be accorded to its imposition and payment, whether such payment should entitle the association to do business in the State, and to what extent, the privileges which such license should import and the immunities which it was to secure, are not expressed in this title, but surely it cannot be said that any of these things are foreign to, not suggested or covered by that which is expressed in this sub-title, or, perhaps more accurately speaking, this item in the specification of the minor subjects embraced in the general expression with which the caption begins. Probably the first idea that would occur to one desiring to get the scope of the bill from its caption would have reference to other licenses and other license taxation to be required of and imposed upon these companies; and he would at once realize that the purpose of that bill might well be not only to require the payment of this tax, but, also to declare the effect of such payment in respect of exempting the association from other licenses and taxation. All this, we conclude, "results as a complement of the thought contained in the general expression," and also in this specification,

342 SUPREME COURT [Nov. Term,

[City Council of Montgomery v. National Building and Loan Association.]

and "is included in, and authorized" by both. The provision exempting building and loan associations from other license taxes than that required by this act is not, in our opinion, unconstitutional.

This act was approved on February 7, 1893. An act "To establish a new Charter for the City of Montgomery" was passed at the same session of the General Assembly, and was approved February 21, 1893. This charter confers upon the city council "power to license all business, trades, occupations and professions not prohibited by the constitution and laws of the State of Alabama, and to fix the amount of the license, and to provide a penalty for doing business without license." Under this provision the city council passed an ordinance requiring all building and loan associations doing business in the City of Montgomery, to pay a license tax of fifty dollars per annum. The National Building & Loan Association, doing business in said city and also throughout the State and in other States, and hence being within the terms of the exemption provided by the act of February 7, 1893, refused to pay this license tax, and this action is prosecuted by the city to recover double the amount thereof for doing business without having taken out the license. It is sought to maintain the action on the theory that the act establishing the charter and granting therein this broad power of license taxation, having been approved subsequently, repealed the exemption from taxation of this kind provided by the earlier statute for building and loan associations. The repeal relied upon is one by implication, and such repeals are regarded with disfavor in the law, "and will not be decreed unless it is manifest that the legislature so intended. As laws are presumed to be passed with deliberation and with full knowledge of all existing ones on the subject, it is but reasonable to conclude that in passing a statute it was not intended to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is not only irreconcilable, but, also clear and convincing, and following necessarily from the language used, unless the latter act fully embraces the subject matter of the earlier, or unless the reason for the earlier act is beyond peradventure removed. Hence every effort must be used to make all acts stand,

and if, by any reasonable construction, they can be reconciled, the later act will not operate as a repeal of the earlier.''—23 Am. & Eng. Ency. of Law, pp. 489–492. Being thus largely a question of intention, the presumption against a repeal by implication is stronger when the earlier act deals specifically with one subject or particular class of subjects, and the later one deals with many subjects in a general way and by general reference to them collectively, which embrace the one subject of the first statute but without particular reference thereto. As here, for instance, the act of February 7th, was addressed to the one business of building and loan associations, while the later act covered in the most general terms all businesses trades, occupations and professions; and it would seem to be unreasonable to suppose that the legislature intended by these broad terms, in the setting down of which their attention was not directed to any particular business, or to the particular business of building and loan associations, to repeal the law having specific and direct reference to that business alone. The question would seem to come directly within the doctrine declared by this court that ''where the intention of the legislature is not apparent to that purpose, (and it is not here), the general words of another and later statute shall not repeal the particular provisions of a former one; the maxim of the law being, *generalia specialibus non derogant*.''—*Iverson v. State*, 52 Ala. 170. The same principle is declared in *Magruder v. State*, 40 Ala. 349, where Dwarris is quoted approvingly to the effect, that ''when the law descends to particulars, such more special provisions must be understood as exceptions to any general rules laid down to the contrary; and the general rules must not (*vice versa*) be alleged in confutation of the special provisions.'' And it is upon this principle that the Supreme Court of Pennsylvania held that a statute forbidding the opening of a road or street through any burial ground is not repealed nor suspended by a subsequent law extending the boundaries of a town and authorizing the town officials ''to survey and lay out and mark the lines of such streets, roads, lanes and alleys as they shall deem necessary within said limits:'' and the court thus illustrates the point: ''Suppose a general law should be passed, pro-

344 SUPREME COURT [Nov. Term,

[City Council of Montgomery v. National Building and Loan Association.]

hibiting railroad companies thereafter to be chartered from taking dwelling houses, could it be pretended that this prohibition would not apply to a company whose act of incorporation authorized them to construct their road from point to point by such route as they might select? Surely not; and yet in principle there would be little, if any, difference between such a case, and the one under consideration."—*Egypt Street*, 2 Grant's Cases, 454. And the argument and inference against repeal in the case before us is strengthened by the consideration that both these acts were passed at the same session of the legislature, that on the 7th of February the legislature, having its attention specially directed simply to the business of building and loan associations, deliberately declared that business should not be subject to municipal license taxation, while in the act passed fourteen days subsequently the same legislators, without having their attention drawn to this business, but referring in the most general terms to "businesses, trades, occupations and professions," authorized the taxation of them by the city in a sweeping clause of a statute dealing with the whole subject of the municipal rights, duties and powers of the City of Montgomery. It cannot in this case be reasonably concluded that the legislature intended thus, without its attention being directed to the matter and without reference to it, to undo what they so recently and so deliberately and specifically had done; but, on the other hand, the rule is, unless the contrary is made to appear, that they intended that both acts should stand and be construed together. Thus it is said in a note on page 491 of 23 Am. & Eng. Encyc. of Law: "The question of implied repeal is one of intention, and where two acts are passed at the same session of the legislature on the same subject it shows an intent that one is not repealed by the other, but that they are to be construed together," citing the following cases which support the text: *Curtwright v. Crow*, 44 Mo. App. 563; *State v. Clarke*, 54 Mo. 216; *Barton v. School Dist.* 29 Pac. Rep. 43; *Commr v. Huntly*, 30 N. E. Rep. 1127. And to the same effect is the following declaration of the New York Court of Appeals: "It is hardly to be presumed that the legislature would repeal an act passed but fourteen days before, and

if they had intended to do so they probably would have said so in some appropriate language, and would not have left it to mere inference;'' and it was accordingly held that both acts were in force, and they were construed together.—*Powers v. Shepard*, 48 N. Y. 450. And so the minute and particular provisions of one act prescribing the salary of a certain officer of a city are not repealed or affected by the provision of another act approved the same day, giving to the common council power in relation to all city salaries.—*St. Martin v. New Orleans*, 14 La. An.'113. And of the same nature was the decision against the repeal of a provision in an earlier act that the omission of the holder of a certificate of purchase under a tax sale to give notice might extend the period of redemption beyond two years, by a subsequent statute limiting in general terms the period of redemption to two years.—*Gaston v. Merriam*, 33 Minn. 271.

The general principal is based, and these adjudications proceed, upon the theory that the intention of the law makers must be effectuated and the courts, to that end must, if possible, find a field for the operation of both statutes so that both can stand, and, to this end also, when two statutes are passed at the same session of the legislature they must be construed together ; the presumption being in such case that the legislature intended that both should stand, and that the earlier should not be repealed by the later. We think these doctrines are of manifest application to the statutes involved in this case. Construing them together, the business of building and loan associations whose operations extend beyond the limits of a single county is to be taken and treated as an exception to the general power conferred upon the city of Montgomery to tax all business, and that power has, so far as this statute relating to such associations is concerned, its field of operation upon all other businesses and also upon the business of building and loan associations organized and doing business only in the county of Montgomery ; and we accordingly hold that the exemption in the act of February 7th was not repealed by the general power given the city by the act of February 21st, 1893. So the circuit held, and its judgment is affirmed.